2013 VT 61

## State of Vermont v. Mutume J. Mutwale

[79 A.3d 850]

No. 12-363

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 2, 2013

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Seth Lipschutz*, Prisoners' Rights Office, Montpelier, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant appeals the trial court's denial of his motion to withdraw a guilty plea, arguing that he was not sufficiently advised of the potential immigration consequences of his conviction. See 13 V.S.A. § 6565(c)(1)-(2); V.R.Cr.P. 11(c)(7). We affirm because the language employed during defendant's plea colloquy adequately advised defendant that a guilty plea could result in deportation or denial of U.S. citizenship.

¶ 2. Defendant pleaded guilty in August 2012 to three counts of misdemeanor domestic assault under 13 V.S.A. § 1042 and to an unrelated charge of driving under the influence. At the change-of-plea hearing pursuant to Vermont Rule of Criminal Procedure 11, the court advised defendant:

> I do have to tell you that, if you're not a U.S. citizen, a conviction on these offenses — the underlying facts — could have an impact on your ability to become a citizen, could lead to deportation, or you could be denied reentry into the country. Do you understand that?

Defendant responded: "Yes, your honor." The court accepted defendant's change of plea and sentenced him to eighteen-to-seventy months with no credit for time served, as previously

agreed with the State. Defendant began to serve his sentence immediately.

¶ 3. More than a month later, defendant sent a letter to the trial court's criminal division, asking to "take my plea back and re-open my case." In the letter, defendant stated: "Due to ineffective counsel . . . I am now a subject of deportation, 8 U.S.C. § 1227(a)(2)(E). When I took . . . my plea, the court and counsel fail to advice me that a guilty plea on a crime of domestic violence would result in an automatic deportation."[1]

¶ 4. The trial court denied defendant's motion to withdraw his guilty plea. It reviewed the recording of the plea colloquy and determined that "the court explained to the defendant that the convictions could result in deportation and the defendant agreed he was aware he could be deported." The court then concluded that there was compliance with Rule 11 and 13 V.S.A. § 6565 regarding the consequences of the plea. In its order, the trial court also cited Vermont Rule of Criminal Procedure 32(d), ruling that a motion to withdraw a plea after a sentence has been imposed and while in custody "is not available to defendant."[2]

¶ 5. Defendant now appeals, arguing that the trial court should have granted his motion because the warning he received from the trial judge regarding immigration consequences was insufficient to satisfy the requirements of 13 V.S.A. § 6565(c)(1).[3] The State

---

[1] Although defendant made mention of "ineffective counsel" in his letter, defendant directed the correspondence to the criminal division, and his request was interpreted as a motion to withdraw his plea, not as a civil complaint for post-conviction relief based upon ineffective assistance of counsel. Accordingly, we confine our review to the sufficiency of the trial court's Rule 11(c)(7) immigration warning.

[2] It is not clear from the entry order whether the court intended its reference to Rule 32(d) as an alternative ground for the denial of plaintiff's motion under 13 V.S.A. § 6565(c)(2) or simply an observation that Rule 32(d) would bar other types of motions to withdraw a plea. See V.R.Cr.P. 32(d) ("A motion to withdraw a plea of guilty or of nolo contendere may be made only by a defendant who is not in custody under sentence."). In the event the trial court referenced Rule 32(d) as an alternative ground for denying defendant's motion to withdraw based on an inadequate admonition regarding immigration consequences, we note that the Reporter's Notes to the 2006 amendments to Rule 11(c)(7) specifically indicate that the "provision [of § 6565(c)(2)] will take precedence over the provisions of Rule 32(d) concerning time periods and other limits on motions for plea withdrawal."

[3] Before the trial court ruled on the motion at issue in this appeal, defendant filed a notice of appeal on an unrelated ground. The status of the other appeal is not clear from the record and, in any event, it is not encompassed by the current appeal.

responds that the court's warning substantially complied with the statute and corresponding criminal procedure rule, noting the court's words were "simply a paraphrase of the statutory language, with no significant difference between the two."

¶ 6. Section 6565(c)(1) of Title 13 requires that, before accepting a guilty plea, the court "shall address the defendant personally in open court, informing the defendant and determining that the defendant understands that, if he or she is not a citizen of the United States . . . pleading guilty . . . to a crime may have the consequences of deportation or denial of United States citizenship."[4] Section 6565(c)(2) permits the defendant to withdraw a plea "at any time" if its two requirements are met. First, the court accepting the plea must have "fail[ed] to advise the defendant in accordance with [§ 6565(c)(1)]." 13 V.S.A. § 6565(c)(2). Second, the defendant must show "the plea and conviction may have or has had a negative consequence regarding his or her immigration status." *Id.* If these two requirements are met, the court "shall vacate the judgment and permit the defendant to withdraw the plea." *Id.*

■ ¶ 7. We conclude that the first requirement of 13 V.S.A. § 6565(c)(2) was not met because the trial court adequately informed defendant of the potential immigration consequences of his conviction. Change-of-plea hearings must comply with Rule 11. To implement 13 V.S.A. § 6565(c)(1), Rule 11 includes language that is indistinguishable from that of the statute. It mandates:

> (c) The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands the following:
>
> . . . .
>
> (7) if the defendant is not a citizen of the United States . . . pleading guilty . . . to a crime may have the consequences of deportation or denial of United States citizenship.

V.R.Cr.P. 11(c)(7).

---

[4] For purposes of this appeal, we assume that defendant is not, in fact, a U.S. citizen although that fact does not appear to be explicitly referenced in any of the pleadings.

■ ¶ 8. The trial judge was not required to recite the language of Rule 11(c)(7) verbatim; substantial compliance with the requirements of Rule 11 is sufficient to withstand a challenge to the sufficiency of a plea hearing. See *State v. Riefenstahl*, 172 Vt. 597, 599, 779 A.2d 675, 678 (2001) (mem.) ("[W]e require only a practical application of the rule ensuring fairness, rather than a technical formula to be followed." (quotation omitted)). Indeed, the Legislature considered an earlier draft of 13 V.S.A. § 6565 that would have compelled the court to use precise language to warn immigrant defendants of possible collateral consequences of a conviction by placing the language required within quotation marks. This version did not pass, however, and the enacted version of the bill includes no language in quotation marks. Compare 13 V.S.A. § 6565(c)(1), with S.182, § 1, 2005-2006 Gen. Assem., Bien. Sess. (Vt. 2006) (bill as introduced) ("[T]he court shall personally address the defendant in open court, advising him or her of and determining that he or she understands the following: 'If you are not a citizen of the United States, you are hereby advised that pleading guilty or nolo contendere to a crime may affect your immigration status now or in the future. Admitting guilt may result in immigration consequences even if the charges are later dismissed. Your plea or any admission of guilt that you make in this court may result in your deportation or removal from the United States, could prevent you from ever being able to obtain legal status in the United States, or could prevent you from becoming a U.S. citizen.' "); cf. *State v. Francis*, 2004-Ohio-6894, ¶ 20, 820 N.E.2d 355 (when immigration warning was enclosed within quotations, holding trial court was required to recite language verbatim).

■ ¶ 9. We discern no substantive difference between the phrase "may have the consequences of" as used in the statute, and the phrases "could have an impact on" and "could lead to" as spoken by the trial judge. It was within the trial judge's discretion to formulate phrasing that explained to defendant the possibilities of deportation or denial of U.S. citizenship. See V.R.Cr.P. 11(c)(7); *In re Hall*, 143 Vt. 590, 594-95, 469 A.2d 756, 758 (1983).

¶ 10. Here, the trial judge properly identified these two specific consequences. V.R.Cr.P. 11(c)(7). Indeed, he exceeded the statutory minimum by further informing defendant of the possibility of exclusion from the country. This case is therefore unlike those in other states in which trial courts have erred by not sufficiently

specifying the possible immigration consequence as required by law. See *State v. Sorino*, 118 P.3d 645, 651 (Haw. 2005) (holding that warning that "this plea may have a bearing on whatever relationship you have with the Immigration and Naturalization Service" completely failed to specify consequences of plea as required by statute); *Machado v. State*, 839 A.2d 509, 510, 513 (R.I. 2003) (per curiam) (holding that warning that plea might have "some effect upon what happens with the immigration service" was inadequate because court did not identify specific consequences required by statute).

■ ¶ 11. Defendant also contends that the court should have informed him that he is subject to automatic denial of citizenship, which he describes as a "direct consequence" of his plea. The Rule 11 colloquy requires that the defendant know and understand the "direct consequences" of his plea in order to ensure that his waiver of constitutional rights is voluntary. See *In re Parks*, 2008 VT 65, ¶ 14, 184 Vt. 110, 956 A.2d 545 ("A trial court's failure to satisfy any of the core objectives of Rule 11 — ensuring that the guilty plea is free of coercion, that the defendant understands the nature of the charges against him, and that the *defendant is aware of the direct consequences of his plea* — affects the defendant's substantial rights." (emphasis added)); see also *State v. Pilette*, 160 Vt. 509, 511, 630 A.2d 1296, 1297 (1993) ("A guilty plea is not voluntary unless the defendant knows and understands the consequences that attach to the plea").

■ ¶ 12. However, in the context of plea hearings, "direct consequences" include only those which the court itself can impose. See *State v. Setien*, 173 Vt. 576, 579-80, 795 A.2d 1135, 1140 (2002) (mem.) (upholding defendant's prior burglary and felony retail theft convictions, even though he did not receive warnings about the consequences of recidivism); *Pilette*, 160 Vt. at 510-11, 630 A.2d at 1297 (holding that defendants knew and understood consequences of their DUI pleas, even though trial court did not inform them of bill under debate by Legislature that could enhance future similar convictions to felony level); *In re Moulton*, 158 Vt. 580, 583, 613 A.2d 705, 708 (1992) (holding that Rule 11 does not require court to ensure that defendant understands consequences of nolo contendere plea on parole eligibility in sexual assault case). Rule 11(c)(7) mandates that the court put a defendant on notice that federal authorities may impose speci-

fied immigration consequences; the rule does not, however, require the court to predict whether federal authorities will definitely impose those consequences, nor does the court have the ability to do so. See *Pilette*, 160 Vt. at 510-12, 630 A.2d at 1297 (holding not only that court had no obligation to predict consequences but also that court could not have predicted consequences); see also *In re Moulton*, 158 Vt. at 583, 613 A.2d at 708 (noting that court is not required to predict consequence but not addressing court's ability to do so); cf. *Setien*, 173 Vt. at 580, 795 A.2d at 1140.

■ ¶ 13. Even assuming that defendant's convictions will automatically bar him from gaining citizenship — which is not necessarily clear from the record or the applicable federal law[5] — 13 V.S.A. § 6565(c)(2) only requires that the court in its Rule 11 colloquy inform defendants of the potential of deportation or denial of citizenship before accepting a guilty plea. See *State v Stewart*, 822 A.2d 366, 369 (Conn. App. Ct. 2003) (holding that trial judge's warning that if defendant was not citizen that conviction might have consequences of deportation, exclusion, or denial of naturalization was sufficient, even though judge did not inform defendant that his conviction would certainly result in deportation). The law does not require the court to analyze the hypothetical impact of defendant's conviction on his federal immigration status, nor would this task be appropriate for a Vermont court. See *Pilette*, 160 Vt. at 511-12, 630 A.2d at 1297; *Stewart*, 822 A.2d at 369.

*Affirmed.*

---

[5] Good moral character is a prerequisite for naturalization, and an "aggravated felony" under federal law bars a finding of good moral character. 8 U.S.C. § 1101(a)(43)(F). An offense that includes the use of physical force against another's person is one type of aggravated felony. See 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(a). However, even though defendant maintains that he is automatically ineligible for naturalization, whether his particular domestic assault conviction under 13 V.S.A. § 1042 constitutes an aggravated felony as defined by federal law appears speculative. The record does not indicate any formal notice from federal immigration authorities to that effect, and it does not appear that the relevant federal authorities or courts have determined the effect of a Vermont domestic assault conviction.